# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION – CINCINNATI

| | |
|---|---|
| JAMES MOONEY, Individually and on behalf of H.M, a minor, and MERCEDES MOONEY, | : Case No. 1:19-cv-791 :  : Judge Matthew W. McFarland |
| Plaintiffs, | : |
| v. | : |
| GENZYME CORPORATION, | : |
| Defendant. | : |

## ORDER GRANTING DEFENDANT GENZYME CORPORATION'S ALTERNATIVE MOTION TO TRANSFER VENUE (DOC. 24)

This matter is before the Court on the Alternative Motion to Transfer Venue (Doc. 24) filed by Defendant Genzyme Corporation ("Genzyme"). The Motion has been fully briefed and is ripe for review. (Docs. 24, 26, 28.) Genzyme argues that, under 28 U.S.C. § 1404(a), the public and private interests at stake weigh in favor of transferring this action to the District of Massachusetts. As discussed below, balancing the considerations of the parties and the interests of justice, the Court agrees that transfer is appropriate and therefore **GRANTS** the Motion to Transfer Venue.

## FACTS

Plaintiff James Mooney is the father of H.M. (a minor) and Mercedes Mooney. Mr. Mooney lives with H.M. in Lebanon, Ohio and Ms. Mooney lives in Mason, Ohio. Genzyme is incorporated in and has its principal place of business in Massachusetts.

Plaintiffs brought this action in this Court pursuant to its diversity jurisdiction under 28 U.S.C. § 1332.

H.M. and Ms. Mooney both suffer from a rare genetic, lethal disease known as Fabry disease, where the body lacks an enzyme that breaks down a certain fat. This disease can be treated with the infusion of medication containing synthetic forms of Fabrazyme, the enzyme that Fabry patients lack. Genzyme is a pharmaceutical company that has the exclusive right to manufacture and sell Fabrazyme in the United States.

Plaintiffs allege that Genzyme's Framingham, Massachusetts plant experienced outbreaks of Vesivirus-2117 in 2013 and 2015. Vesivirus-2117 is a small virus classified as a Category B Biodefense Pathogen by the U.S. Institute for Allergy and Infectious Disease and can be extremely dangerous to humans who become infected. Plaintiffs allege that they were infected with Vesivirus-2117 in 2015 after taking Fabrazyme infected with the virus that was manufactured at the Framingham plant.

Plaintiffs assert three strict liability claims against Genzyme under the Ohio Product Liability Act: (1) manufacturing defect, (2) failure to adequately warn, and (3) failure to conform to representations. They also assert a fourth claim for common law negligence against Genzyme, for which they seek a medical monitoring program funded by Genzyme. On February 19, 2020, Genzyme moved to dismiss the Amended Complaint. On February 28, 2020, Genzyme filed the motion now before the Court, which seeks to transfer this action to the District of Massachusetts. Because transfer under 28 U.S.C. § 1404 is appropriate, the Court does not consider Genzyme's pending motion to dismiss below.

## LEGAL STANDARD

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of the transfer is to "prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The moving party bears the burden to establish a need for transfer. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849-850 (S.D. Ohio 2004) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)). Moreover, district courts have wide discretion in deciding motions to transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

Transfer under § 1404(a) turns on a two-pronged test: (1) whether the plaintiff could have brought the action in the transferee court; and (2) whether, on balance, the considerations of the parties and the interests of justice favor transfer. *Kay*, 494 F. Supp. 2d at 849-50. Courts consider case-specific factors concerning the private interests of the parties, as well as public interests, to determine whether a transfer is consistent with § 1404(a). *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). "The balance of convenience, considering all the relevant factors, 'should be strongly in favor of a transfer before such will be granted.'" *Kay*, 494 F. Supp. 2d at 850, quoting *First Bank of Marietta v. Bright Banc Savings Assoc.*, 711 F.Supp. 893, 896–97 (S.D. Ohio 1988).

The considerations are like those in a *forum non conveniens* analysis but transfers under § 1404(a) may be granted "upon a lesser showing of inconvenience." *Bartell v. LTF Club Operations Co.*, No. 2:14-cv-0040, 2015 WL 770341, at *5 (S.D. Ohio Feb. 23, 2015) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). However, the burden on the moving party is not light. The plaintiff's chosen venue should not be disturbed without a showing significantly weighing in favor of transfer. The factors tipping the scale toward transfer therefore must justify disturbing the plaintiff's choice.

## ANALYSIS

Regarding the first prong of § 1404(a), the parties agree that the action could have been brought in the District of Massachusetts, where Genzyme is a resident. Venue is indeed proper "in a judicial district in which any defendant resides." 28 U.S.C. § 1391(b). The first prong of the test is thus satisfied.

The second prong requires balancing the public and private interest factors at stake in the transfer of venue. Here, both sets of factors weigh in favor of transfer.

### A. Public Interest Factors

Public interest factors include inquiries such as "the pendency of related litigation in another district, judicial economy, the transferee judge's familiarity with the facts and circumstances of the case, and the need to promote the fair and consistent resolution of related cases." *Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 1:15-cv-416, 2016 WL 223683, at *7 (internal quotes omitted).

As Genzyme is a Massachusetts-based company, it correctly asserts that Massachusetts has an interest in adjudicating Plaintiffs' claims against it. Genzyme also

points to similarities between this case and other litigation against it in Massachusetts. The presence of ongoing or past litigation in the transferee court that is similar to the case at hand is one of the most significant factors when considering transfer. *Moran v. A/C Fin., Inc.*, No. 05-cv-0071, 2006 WL 2815491, at *6 (S.D. Ohio Sept. 28, 2006). This factor carries substantial weight because the adjudication of similar litigation in the same district improves judicial economy and consistency. *Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n* No. 1:15-cv-416, 2006 WL 2815491, at *6 (S.D. Ohio Jan. 19, 2016). The claims in the other district and the instant case need not be "duplicative"; the two need only have the same central issue. *Id.* Moreover, this factor "is granted considerable weight: 'the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interests of justice.'" *Id.* (quoting *Proctor & Gamble Co. v. Team Techs. Inc.*, No. 1:12-CV-552, 2012 WL 5903126, at *7 (S.D. Ohio Nov. 26, 2012)).

Genzyme asserts that Mr. Mooney was a plaintiff in substantially similar litigation against it brought in the District of Massachusetts. *See Hochendoner v. Genzyme Corp.*, 95 F. Supp. 3d 15 (D. Mass. 2015), *aff'd in part, vacated in part, remanded*, 823 F.3d 724 (1st Cir. 2016). Although the other litigation involved Fabrazyme manufactured in Genzyme's Allston plant (instead of Framingham), Genzyme contends the central issue in the case was the same — whether the plaintiffs contracted a virus by taking contaminated Fabrazyme. Plaintiffs argue that, for purposes of the Court's venue analysis, prior litigation should not be considered similar unless it involved the same parties and identical causes of action. But a court need only look to the existence of *similar* litigation,

not the same litigation. *Moran*, 2006 WL 2815491, at *6; *Pac. Life Ins. Co.*, 2006 WL 2815491, at *7. The facts in this case and *Hochendoner* are substantially similar — they center around the drug Fabrazyme, its treatment of the rare Fabry disease, and the viral contamination of the drug and its effect on patients. Not only do the cases share these same factual issues, but they also raise similar defenses.

Plaintiffs point out that the claims they bring are not identical to those brought in the prior litigation in Massachusetts. *See Hochendoner*, F. Supp. 3d at 20. The *Hochendoner* plaintiffs sued on several theories of liability, while the instant case centers more closely on product and strict liabilities claims brought under the Ohio Product Liability Act. *Id.*; (Doc. 10.) While the claims are not "duplicative", they are similar in nature. On remand in the prior case, Mr. Mooney filed an amended complaint alleging contamination of Fabrazyme with Vesivirus-2117. *Adamo v. Genzyme Corp.*, No. 13-cv-11336-DPW (d. Mass. Aug. 3, 2016), ECF No. 63, ¶ 76.

Due to these similarities, the District of Massachusetts has a unique familiarity, not only with Genzyme, but with the specific factual and legal issues that will be raised in this case. This familiarity weighs heavily in favor of transfer.

Plaintiffs assert that Ohio also has an interest in adjudicating this case because the claims arise under the Ohio Product Liability Act, and the state has an interest in interpreting its own laws. However, the state where the applicable law arises is not "controlling" in the venue analysis. *Artisan Dev., Div. of Kaiser Aetna v. Mountain States Dev. Corp.*, 402 F. Supp. 1312, 1316 (S.D. Ohio 1975). In fact, some courts have even said it "should be given little weight." *Id.* (quoting *Atlantic Richfield Co. v. Stearns-Roger, Inc.*,

6

379 F. Supp. 869, 872 (E.D. Pa. 1974)). While this factor may weigh in Plaintiffs' favor, it does not do so heavily.

Given the prior litigation in Massachusetts, Genzyme's status as a Massachusetts-based corporation, and the little weight that choice of law has on determining venue, the public interest factors weigh substantially in favor of transfer.

### B.   Private Interest Factors

Private interest factors include convenience of witnesses, location of occurrence of operative facts and evidence, and possibility of prejudice in the venue. *West Am. Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990). While the plaintiff's choice of venue should typically be given considerable weight, such choice is given less weight when the cause of action "has little connection with the chosen forum." *Pac. Life Ins. Co.*, 1:15-cv-416, p. 12.

Even when the operative facts occurred in multiple fora, when the key "actions and events," or the "real focus" of the case occurred in the transferee venue, then transfer is appropriate. *Artisan Dev.*, 402 F. Supp. at 1315, 1317. Genzyme emphasizes that Plaintiffs' claims in this case involve the alleged contamination at its plant in Massachusetts. Consequently, despite the allegation that Plaintiffs took the contaminated Fabrazyme in Ohio, the actions that allegedly caused the contamination and the alleged cover-up of that contamination occurred in Massachusetts. As a result, the witnesses with firsthand knowledge of the operative facts and the documents related to the alleged contamination are located in Massachusetts. Genzyme therefore argues that, because the witnesses, Genzyme's records, and the plant itself are all in or near Massachusetts, the private interests weigh in favor of transfer.

In response, Plaintiffs assert that transferring this case to Massachusetts would require them to travel from Ohio to Massachusetts for proceedings. Such travel, argues Plaintiffs, would interrupt H.M.'s schooling and require a guardian to travel with her. Additionally, they claim the plant's location is irrelevant because the contamination is microscopic and cannot be viewed. In civil litigation, however, the plaintiff's personal attendance at most proceedings leading up to trial should not be required. And, there are some proceedings, such as the depositions of non-party witnesses, that are likely to occur in Massachusetts regardless of where this action is venued. *See* Fed. R. Civ. P. 45(c) (subpoena may command person to attend deposition only within 100 miles of "where the person resides, is employed, or regularly transacts business in person"). Thus, the additional burden on Plaintiffs, while by no means negligible, does not weigh heavily against transfer.

In the balance, the private interest factors also weigh in favor of transferring this case to the District of Massachusetts. The location of most of the witnesses and records in this case is significant, as is the fact that the plant itself is in Massachusetts. Plaintiffs discount the importance of the plant's location, but there are valid reasons why the parties' counsel may need to visit the plant. The parties' counsel may need to visit the plant, for example, to understand Genzyme's safety protocols and to educate their respective medical and/or scientific experts. Although H.M.'s age makes her travel inconvenient, requiring multiple witnesses to travel to Ohio for trial would also be inconvenient. The inconvenience of venue therefore cuts both ways, but most of that inconvenience may fall on the non-parties in Massachusetts who are asked to testify.

## CONCLUSION

In sum, the balance of public and private interests at stake in this case weighs strongly in favor of transfer. Accordingly, Genzyme's Alternative Motion to Transfer Venue (Doc. 24) is hereby **GRANTED**. The Clerk of Court is directed to transfer this matter to the District of Massachusetts and remove it from the docket of this Court.

**IT IS SO ORDERED.**

                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF OHIO

By: *[signature]*
                                    JUDGE MATTHEW W. McFARLAND